IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA LAWRENCE WELLINGTON,<br><br>Defendant. | CR 24-150-BLG-SPW<br><br>ORDER |

Defendant Joshua Lawrence Wellington filed a Motion in Limine to Exclude the Government's Proposed 404(b) Evidence. (Doc. 30). The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 21, 30, 31, 32).

For the following reasons, the Court grants in part, denies in part, and reserves for ruling in part Wellington's Motion.

I. **Background**

On October 17, 2024, a grand jury returned a single-count Indictment charging Wellington with kidnapping Jane Doe 1,[1] in violation of 18 U.S.C. § 1201(a)(1). (Doc. 2). The Government plans to show that in June 2024, Wellington physically and sexually abused Jane Doe 1 in Miles City, Montana before forcing

---

[1] According to the Indictment, "Jane Doe" is the subject of the kidnapping charge. However, because the Government intends to introduce prior acts evidence related to a second Jane Doe, the Court will refer to "Jane Doe" as Jane Doe 1 and the second Jane Doe as Jane Doe 2.

1

her to travel to South Dakota and elsewhere. (Doc. 32 at 2). The physical abuse continued until Jane Doe 1 ran away from Wellington while they stopped for gas in Lemmon, South Dakota. (*Id.*). Jane Doe 1 is expected to testify that Wellington intentionally detained her against her will, often through physical means. (*Id.* at 7).

On January 30, 2025, the Government filed notice, pursuant to Federal Rule of Evidence 404(b), apprising the Court and Wellington of its intent to introduce evidence of Wellington's prior relationship with Jane Doe 2. (Doc. 21). The Government provided supplemental notice on July 10, 2025, outlining additional details about Wellington and Jane Doe 2's relationship. (Doc. 32 at 3–4).

Jane Doe 2 and Wellington were in a relationship from 2010 to 2017. (Doc. 21 at 2). During their relationship, Wellington physically abused Jane Doe 2. On a few occasions, Wellington used weapons such as a knife, fork, or screwdriver to stab Jane Doe 2. (*Id.*). "The abuse culminated in May 2017 when Wellington struck Jane Doe 2 with a metal bar," after which Wellington was convicted of assault in state court. (*Id.*).

According to the Government, Wellington's abusive behavior often corresponded with his methamphetamine use. (Doc. 32 at 3). For example, in 2015, Wellington began using methamphetamine again after a period of sobriety while Jane Doe 2 was pregnant with his child. (*Id.*). Unbeknownst to Jane Doe 2, Wellington slipped drugs into her food and drink while she was pregnant. (*Id.*).

2

Consequently, she went into early labor. (*Id.*). Wellington apparently told Jane Doe 2 that "if we're going down, we're going down together." (*Id.*).

In addition to physical abuse, Wellington did not allow Jane Doe 2 to stay alone at their house while he went out. (*Id.*). If Wellington left the house, his grandmother remained with Jane Doe 2 in the home. (*Id.*). Likewise, Wellington would accompany Jane Doe 2 to the bathroom "so she could not talk to anybody out of the window." (*Id.* at 4). She was not allowed to own a phone or a computer. (*Id.* at 3).

The Government intends to use the prior acts evidence to demonstrate Wellington's intent to control his victims. (*Id.* at 4). Wellington, however, seeks to exclude the evidence in limine arguing that under Rule 404(b), the prior acts do not prove a material point, are not similar enough to the instant offense to justify admission, and otherwise, are unfairly prejudicial to him. (Doc. 31 at 5–6).

## II.  Legal Standard

A motion in limine is a procedural mechanism to limit in advance specific testimony or evidence. *Frost v. BNSF Ry.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016). The Court will grant a motion in limine if the contested evidence is inadmissible on all potential grounds. *Id.*

Rulings on motions in limine are provisional and "not binding on the trial judge [who] may always change [their] mind during the course of a trial." *Ohler v.*

*United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, the Court may readdress any of the parties' motions in limine as necessary at trial.

## III.  Analysis

Rule 404(b)(1) of the Federal Rules of Evidence prohibits the admission of any other crime, wrong, or act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." This type of evidence is also known as propensity evidence and is generally disallowed at trial. However, such evidence may be admissible for another purpose, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). Rule 404(b) is "[a rule] of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove *only* criminal disposition." *United States v. Rocha*, 553 F.2d 615, 616 (9th Cir. 1977) (emphasis in original).

Because the Government's proposed evidence constitutes "other act" evidence, the Court must apply the Ninth Circuit's four-part test to determine the admissibility of the evidence under Rule 404(b). *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995).

> Evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

4

*Id.* Even if evidence of prior criminal conduct is admitted under Rule 404(b), it "still must be weighed for its probative value and potential for prejudice under Rule 403." *United States v. Pitts*, 6 F.3d 1366, 1371 (9th Cir. 1999).

A.   Rule 404(b)

Wellington does not argue that the prior acts in this case are too remote in time[2] or that the evidence is insufficient to support a finding that he committed the prior acts against Jane Doe 2.[3] Instead, Wellington contends that the evidence does not tend to (or is not relevant to) prove a material point and that his alleged abuse of Jane Doe 2 is not sufficiently similar to the instant offense to justify its admission. (Doc. 31 at 5–7). In essence, Wellington argues that the fact that he abused Jane Doe 2 does not tend to prove that he intended to unlawfully restrain Jane Doe 1 for an appreciable period against her will. (*Id.* at 6); *see Chatwin v. United States*, 326 U.S. 460 (1946). He asserts that assault and kidnapping are separate offenses, and thus the admission of his abusive behavior against Jane Doe 2 would merely conflate the issues and confuse the jury. (Doc. 31 at 8). Wellington's arguments regarding relevancy and similarity are closely related, and the Court will address them together.

---

[2] Wellington concedes: "[T]he alleged acts of abuse by Mr. Wellington on Jane Doe 2 are not too remote in time." (Doc. 31 at 6).

[3] The sufficiency factor is satisfied because the testimony of a single witness—that of Jane Doe 2—"satisfies the low-threshold test of sufficient evidence for purposes of Rule 404(b)." *United States v. Dhingra*, 371 F.3d 557, 566 (9th Cir. 2004).

5

"With respect to the relevance requirement—the first prong of the 4-part test—the Government 'must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.'" *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (quoting *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982)). For example, "a person who has knowingly carried marijuana in a backpack across the border on one occasion will know that he is carrying marijuana in his backpack when he is caught carrying marijuana in the same way as he crosses the border on a later occasion." *Id.* Further, when a prior criminal act is used to prove intent or knowledge, as the Government has done here, the Government must demonstrate the similarity between the two events. *Id.* "The greater the dissimilarity of the two offenses, the more tenuous the relevance." *Id.*

Here, the Government hypothesizes that the common thread between the prior acts and the instant offense is Wellington's use of control over his victims through abuse. In substance, Wellington's means and motive to control Jane Doe 2 are probative of his intent to control[4] Jane Doe 1 and thus, the Government contends the prior acts are admissible. (Doc. 32 at 7–8 ("Wellington's state of mind will likely

---

[4] "The act of holding a kidnapped person . . . necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim." *Chatwin*, 326 U.S. at 460. The "involuntariness of seizure and detention . . . is the very essence of the crime of kidnapping." *Id.* at 464.

be *the* critical element for the jury to convict.")). The Government points to the similarities between the prior acts and the instant offense to prove its hypothesis. The Court reviews the similarities in turn.

### 1.    *Wellington's Physical Abuse of Jane Doe 2*

The Government first proffers that Jane Doe 1 was a victim of Wellington's physical abuse, as was Jane Doe 2. (*Id.* at 11). Further, the Government proffers that Wellington used weapons against Jane Doe 1, as he did against Jane Doe 2. (*Id.*). Thus, the Government concludes that "Wellington's previous—and remarkably similar—treatment of Jane Doe 2 bears directly upon the theory of the [G]overnment's case" that Jane Doe 1 was held by Wellington against her will, "often through physical means." (*Id.* at 7, 17).

Undoubtedly, there are similarities between the types of physical abuse Wellington used against both Jane Does; however, Wellington takes the position that the abuse against Jane Doe 2 is dissimilar to the instant offense because physical abuse (assault) is not an element of kidnapping, and thus it should not be admitted as prior acts evidence. (Doc. 31 at 6). Wellington relies on *United States v. Jackson*, 24 F.4th 1308 (9th Cir. 2022), to bolster his argument.

The *Jackson* case arose from a violent incident in July 2017, where Jackson attacked his then-girlfriend on the Navajo Nation Indian Reservation. *Id.* at 1309. During the attack, Jackson punched his girlfriend, dragged her by her hair, and

7

attempted to pull her into their dwelling. The attack lasted approximately six to seven minutes. *Id.* at 1310. Jackson was convicted of assault resulting in serious bodily injury and kidnapping under 18 U.S.C. § 1201(a)(2). *Id.* at 1310–11. On appeal, the Ninth Circuit reviewed the elements of § 1201(a)(2) to determine whether Jackson's actions constituted kidnapping. The court found that Jackson's violent conduct was primarily an assault, not a kidnapping, because Jackson did not hold his girlfriend beyond the assault itself and the danger to his girlfriend was from the assault, not from any independent confinement. *Id.* at 1309, 1314–15.

Though the *Jackson* court did not undergo a Rule 404(b) analysis, the Court finds the Ninth Circuit's review of the statutory meaning of kidnapping instructive. Before applying the kidnapping elements to the facts, the *Jackson* court recapped the Supreme Court's warning about the danger of broadening kidnapping "into a secondary charge wherever there is a detention accompanying another crime." *Id.* at 1312 (internal quotation marks omitted) (quoting *Chatwin*, 326 U.S. at 427). The court heeded the warning and found the facts in Jackson's case did not bear the hallmarks of a "true kidnapping." To conclude otherwise, the court reasoned, ran the risk of converting the kidnapping statute "into a steroidal version of the assault laws—exactly what the Supreme Court and [the Ninth Circuit] warned against." *Id.*

While it appears that the Government intends to show Wellington's willful intention to confine Jane Doe 1 against her desires through physical force, the

8

Government has made no such showing as to Jane Doe 2. As far as the Court can glean, Wellington and Jane Doe 2 were in an abusive relationship for seven years. The abuse culminated after Wellington struck Jane Doe 2 with a metal bar, which resulted in an assault conviction. The prior acts clearly show significant danger to Jane Doe 2 resulting from an abusive relationship; however, unlike Jane Doe 1, the evidence fails to show danger resulting from independent confinement. For these reasons, the prior acts and the instant offense are dissimilar and the relevance of introducing Wellington's assault of Jane Doe 2 is tenuous at best.

Moreover, introducing Wellington's prior physical abuse of Jane Doe 2 without an intent to independently confine her runs the risk of conflating a kidnapping offense with an assault. *See id.* While the two offenses can coexist, the Court does not have enough facts to make a ruling one way or the other at this time. Therefore, the Court reserves its ruling until trial.

    2.    *Wellington's Intent to Confine Jane Doe 2 in the Home*

Next, the Government proffers that Jane Doe 1 was afraid of Wellington, as was Jane Doe 2. (Doc. 32 at 11). Further, the Government proffers that Wellington used a climate of fear as a means to control Jane Doe 1, as he similarly did with Jane Doe 2. (*Id.*). Here, the prior acts evidence tends to show that Wellington compelled Jane Doe 2 to remain in the home. Without a phone or computer, she could not contact anyone outside the home. She was never left alone in the home and

9

Wellington did not allow her to use the bathroom alone for fear that she might contact someone through the window. The Court finds these facts are probative of Wellington's intent (and knowledge) to hold his victims against their desires. *See Chatwin*, 326 U.S. at 460. For that reason, Wellington's prior acts related to Jane Doe 2's confinement in the home are relevant and similar to the instant offense, and the Court will allow the Government to introduce the prior acts as represented by Jane Doe's fear of Wellington and the circumstances surrounding her confinement in the home.

### 3. *Wellington's Drugging of Jane Doe 2*

Finally, the Government seeks to introduce evidence that Wellington, unbeknownst to Jane Doe 2, slipped drugs into her food and drink while she was pregnant. Wellington apparently told her: "[I]f we're going down, we're going down together." (Doc. 32 at 3). However, the fact that Wellington intended to drug Jane Doe 2 does not necessarily "serve as a substitute for an intent to restrain her movements contrary to her wishes." *Chatwin*, 326 U.S. at 460. Again, the Government fails to delineate the similarities between Wellington's willful administration of drugs to Jane Doe 2 and his unlawful detainment of Jane Doe 1 across state lines. While a "climate of fear" may "echo the tactics" that Wellington used to control Jane Doe 1 during the kidnapping, the Court finds that without more facts, the relevance of drugging Jane Doe 2 is tenuous and lends more support to the

propensity of Wellington's character, not his intent. (Doc. 32 at 11–12). Consequently, the Court will not allow the Government to introduce the prior acts evidence, including his statements, that Wellington drugged Jane Doe 2 while she was pregnant.

B. *Rule 403*

Under Rule 403 of the Federal Rules of Evidence, the Court may exclude any evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). "[I]ts value must be determined with regard to the extent to which the [fact] is established by other evidence, stipulation, or inference. It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice." *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978).

Evidence is unfairly prejudicial only if it has "an undue tendency to suggest decision on an improper basis," commonly, though not necessarily, an emotional one. Advisory Committee's Note, Fed. R. Evid. 403. Evidence is further unfairly prejudicial if it "appeals to the jury's sympathies, arouses its sense of horror,

11

provokes its instinct to punish," or otherwise "may cause a jury to base its decision on something other than the established propositions in the case." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990).

Here, Wellington's argument to exclude the prior acts evidence under Rule 403 is two-fold: first, the introduction of Jane Doe 2's assault runs the risk of confusing the jury and second, the probative value of the evidence as a whole is outweighed by unfair prejudice because it will enflame the "jury to convict [ ] Wellington for being a bad man who assaults women." (Doc. 31 at 7–8).

First, the Court has reserved its ruling as to Wellington's assault of and abusive behavior toward Jane Doe 2 and thus will weigh Rule 403's balancing test as to these prior acts at trial.

Second, the Court finds that the probative value of Jane Doe 2's testimony regarding her fear of Wellington and her home confinement is not substantially outweighed by unfair prejudice. As demonstrated above, the testimony is probative of Wellington's intent to confine his victims against their will. It is likely this fact may only be established through Jane Doe 2's testimony and though it runs the risk of enflaming the jury, the Court will likely provide the jury a limiting instruction reminding it that Wellington is not on trial for any conduct that is not in the Indictment.

Finally, the Court need not weigh the probative value of Wellington's drugging of Jane Doe 2 against unfair prejudice because the Court has excluded the evidence.

## IV. Conclusion

IT IS ORDERED that Defendant Joshua Lawrence Wellington's Motion in Limine to Exclude the Government's Proposed 404(b) Evidence (Doc. 30) is:

1. RESERVED FOR RULING as to Wellington's physical abuse of Jane Doe 2;

2. DENIED as to Wellington's intent to confine Jane Doe 2 in the home; and

3. GRANTED as to Wellington's drugging of Jane Doe 2.

The Clerk of Court shall notify the parties of the making of this Order.

DATED this 16th day of September, 2025.

SUSAN P. WATTERS
United States District Judge

13